Caruthers, J.,
delivered the opinion of the Court.
This bill was filed by Clarissa Simmons-, by her next friend, and her seven children, to recover a negro girl, slave, Jane, in the possession of, and claimed by the defendant, Kincaid, under a bill of sale signed by the said Clarissa, her husband, G-eorge Simmons, a defendant, and her three oldest children, only one of whom, the said Milton E., was of lawful age at the time. The said Clarissa has died pending the suit, and it is prosecuted by the other complainants, her seven children. The bill was dismissed by the Chancellor, and the case is here by appeal.
The father of Clarissa, Ezekial Thomas, died in January, 1850, leaving a considerable estate. In July, of the same year, and before the division of the property, *452 her husband, G-eorge C. Simmons, by deed in due form, made a settlement of all the property that might be derived from her father’s estate, upon the said Clarissa, by the intervention of a trustee, for her separate use for life, with remainder to her children, the complainants. Jane was one of the slaves allotted to her in the division.
By various changes of the trustee, the trust ultimately devolved upon the husband. In 1855, the said Geo. C. Simmons was arrested on a charge of incest, and committed to jail. The defendant, upon the application of Mrs. Simmons and her three oldest children, agreed to assist them in compromising the case with those engaged in the prosecution. The compensation of Kin-caid, was to be one hundred dollars. For two hundred and fifty dollars, the attorney employed to prosecute, agreed to release the accused. This was paid by Kin-caid, and a bill of sale executed to him for the slave, by George C., his wife and the three oldest children. The consideration set forth in the bill of sale, is $800, but the defendant states in his answer, that he only claims to hold the slave for the sum' of $350, that being all his claim.
This being the state of the facts, how is the law touching the rights of the parties ? The settlement upon the wife was good and valid. There are no creditors of the husband at the date of the deed complaining ; indeed, it is not shown that any existed. The wife could have resorted to a Court of Chancery, and enforced her equity to a settlement to the same extent. The same might be done voluntarily, by the husband, as by this, the expense and delay of a bill could be *453 avoided, and this is stated in tbe deed, as tbe reason for adopting that mode. But independent of tbe doctrine of tbe wife’s equity, a husband may make a reasonable settlement upon bis' wife of bis own property, as well as hers, saving tbe right of existing creditors in certain cases.
Then, at tbe time of tbe sale to defendant, tbe slave was vested in Mrs. Simmons for her sole and separate use, and her husband was her trustee by deed, with a vested remainder in bis several children. She could not make a valid sale of her interest but by examination in a Court of Equity; unless that is done, her deed does not bind her; her husband could pass no title, because be bad none, except as express trustee, without power to sell, except in tbe special case provided for in tbe deed, for change of investment, with her sanction. Tbe argument made on this point, is to tbe effect, that Las tbe power to sell exists, it would be binding, as tbe purchaser is not bound to look after tbe application of tbe funds. But in this case, tbe sale was made expressly for tbe discharge of a debt then contracted, and not for reinvestment. It appears that tbe defendant had^full notice, or knowledge of tbe deed of settlement and state of tbe title, actual as well as constructive, tbe deed having been long before registered.
But even if tbe husband and wife could have disposed of tbe life estate of tbe wife, that is now ended by her death, and tbe remainder of these complainants must take effect in possession.
But tbe defendant insists, that if be can do no more, be can bold the three-sevenths, to which tbe three complainants who signed tbe deed, were entitled. This would *454 be so, if they were of age at that time, and if it were not for tbe fact of bis complicity in tbe violation of tbe law, forbidding tbe compounding of prosecutions for crimes. Tbe whole transaction is thus tainted with illegality, and a Court of Equity can extend no relief to any party connected with it. The Courts will not contaminate their own purity, by extending their aid to either party in suoh transactions, but repel them whenever they present themselves. They must be left to the advantages or disadvantages of the condition in which they have placed themselves.
This principle will not allow us to recognize and establish the right of the defendant to the one-seventh of Milton B. Simmons, to which he would be otherwise entitled, under the bill of sale. Neither can the said Milton recover it, because of his deed to defendant. He was competent to sell his remainder interest, being of lawful age, and will not be now allowed to claim it in the face of his bill of sale. But his younger brother and sister, who signed it with him, are not bound, or divested of their rights, on account of their infancy at the time. The result is, that the complainants excluding Milton B., must recover the slave, Jane, with her reasonable hire from the death of their mother, and she will be delivered to them.
To this effect a decree will be drawn up.
The case of the same parties against Calvin Skull, heard with this, for a slave named Isaac, included in the same deed of settlement, differs only in this, that there is no bill of sale from the complainants, or any of them, but he was sold under executions issued against the said George C. Simmons, after his arrest and con *455 finement, and bought by Skull. This proceeding, according to tbe principles stated, passed no right to the purchaser, as this trust property was not liable for the debts of Gleorge C. The right then remained in the complainants, unaffected by said sale. Eor this slave a decree will be made, that he be delivered up to all the complainants, with the hire from the termination of the life estate by the death of Mrs. Simmons.